JUL 24 2026 PM4:07
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

8:26-CV-2141-MSS-TGW

DAEREGESCIA CHAMBERS,

*Plaintiff,*

v.

THE DISTRICT BOARD OF TRUSTEES OF HILLSBOROUGH COLLEGE (formerly known as THE DISTRICT BOARD OF TRUSTEES OF HILLSBOROUGH COMMUNITY COLLEGE)

*Defendant.*

_____/

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Daeregescia Chambers, proceeding *pro se*, sues Defendant, THE DISTRICT BOARD OF TRUSTEES OF HILLSBOROUGH COLLEGE (formerly known as THE DISTRICT BOARD OF TRUSTEES OF HILLSBOROUGH COMMUNITY COLLEGE), and alleges as follows:

I. PRELIMINARY STATEMENT

1. This is a civil rights action brought by Plaintiff, a former student in Defendant's Diagnostic Medical Sonography Program, to redress intentional race discrimination, hostile educational environment, intentional disability discrimination, and unlawful retaliation.

I.F.P.

2. Plaintiff seeks compensatory damages, economic damages, and equitable relief for violations of Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this controversy arises under the laws of the United States, specifically 42 U.S.C. § 2000d *et seq.* (Title VI), 42 U.S.C. § 12131 *et seq.* (ADA), and 29 U.S.C. § 794 (Section 504).

4. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b), because the Defendant operates within this judicial district, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred at institutional facilities located in Hillsborough County, Florida.

## III. PARTIES

5. Plaintiff, Daeregescia Chambers, was at all times material a resident of Hillsborough County, Florida, and was an enrolled student in good standing in Defendant's Diagnostic Medical Sonography Program. Plaintiff is Black and was a qualified individual with a temporary post-surgical disability during the relevant operational periods.

6. Defendant, DISTRICT BOARD OF TRUSTEES OF HILLSBOROUGH COLLEGE, is a public post-secondary educational institution established under the laws of the State of Florida operating multiple campus locations in Hillsborough County, Florida.

7. Effective July 1, 2025, the institution officially changed its operational name from Hillsborough Community College to Hillsborough College. At all times relevant to the discriminatory offenses alleged herein (August 2020 through July 2022), the entity operated under its prior corporate

2

name, but remains the identical political subdivision liable for the actions of its institutional programs.

8. Defendant is a public entity subject to Title II of the ADA.

9. Defendant is a recipient of federal financial assistance, making its institutional programs and activities subject to the mandates of Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973.

10. At all times material, Defendant acted by and through its designated administrative agents, academic directors, program managers, and instructional faculty, including Program Manager Jean Anitori and Professor Carrie Hall.

11. Defendant is legally responsible for the administration of its academic curricula, grading policies, and civil rights compliance.

12. Defendant is liable for the discriminatory and retaliatory operational acts of its administrative agents and instructional faculty where the institution had actual notice of the unlawful conduct and responded with deliberate indifference.

13. At all times material, the instructional faculty and program administrators identified herein were acting within the course and scope of their employment with Defendant.

14. Defendant exercised complete control over the educational environment, clinical assignments, grading calculations, and graduation eligibility criteria within its Diagnostic Medical Sonography Program.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Enrollment and Academic Standing

15. Plaintiff enrolled in Defendant's Diagnostic Medical Sonography Program in approximately August 2020.

3

16. Plaintiff invested substantial personal time, tuition, academic effort, and professional commitment toward completing the program.

17. Plaintiff successfully completed nearly all program requirements and maintained passing academic progress throughout her two-year enrollment.

18. Plaintiff was the only Black student enrolled in her specific program cohort.

**B. Racial Discrimination and Hostile Educational Environment**

19. Throughout Plaintiff's enrollment, Defendant's program faculty subjected Plaintiff to treatment that differed from the treatment provided to non-Black students.

20. Plaintiff experienced inconsistent grading practices and unequal evaluation of her academic work by program instructors.

21. In or around the Summer of 2021, Plaintiff's non-black classmate, informed Plaintiff that Plaintiff's ultrasound scan appeared technically and visually superior to her own work; nonetheless, Plaintiff received a lower grade from faculty than her non-Black classmate.

22. Plaintiff was excluded from program communications, scheduling notices, and academic information that was provided to non-Black students in her cohort.

23. Plaintiff experienced a pattern of dismissive, punitive, and hostile interactions from Professor Carrie Hall.

24. Other students in the cohort noticed the friction and questioned Plaintiff regarding why Professor Carrie Hall singled her out.

25. Due to this pattern of differential treatment, Plaintiff directly questioned Professor Carrie Hall via email on September 28, 2021, regarding whether the hostile treatment was motivated by the fact that Plaintiff is Black.

26. Following this email inquiry, Defendant failed to investigate, correct, or address Plaintiff's concerns, allowing the hostile educational environment to continue.

4

**C. Disability Discrimination Following Medical Emergency**

27. During the Spring 2022 semester, on March 23, 2022, Plaintiff suffered a sudden, life-threatening ruptured ectopic pregnancy while participating in her clinical education requirements.

28. Plaintiff required immediate emergency medical intervention and major surgery, resulting in a temporary physical impairment that substantially limited major life activities, including walking, lifting, and performing manual tasks.

29. Defendant's faculty and administrators obtained actual knowledge of the nature and severity of Plaintiff's medical emergency, her surgical status, and her physical limitations on or about March 23, 2022.

30. Defendant knew that Plaintiff was physically unable to attend in-person classes during her post-surgical recovery period.

31. Upon learning of her medical status, Defendant's agents did not provide Plaintiff with information regarding institutional disability services or available academic modifications.

32. Instead, Professor Carrie Hall treated Plaintiff's medical crisis as an administrative inconvenience and a burden to the program.

33. On March 29, 2022, Professor Carrie Hall sent emails reiterating missed time that had already been reviewed and discussed, applying coercive pressure regarding Plaintiff's return timeline and treating her medical condition as an obstacle to program participation.

**D. Retaliation and Withholding of Academic Information**

34. Plaintiff engaged in protected activity by raising concerns regarding unequal treatment and discriminatory conduct via email on September 28, 2021.

35. Following Plaintiff's opposition to discrimination, Defendant's program faculty furthered their treatment by withholding academic information routinely provided to non-Black and non-disabled students.

5

36. On or about the Summer of 2022, faculty withheld crucial board examination deadline changes, preparation expectations, institutional review materials, and graduation logistics from Plaintiff.

37. Because Defendant's faculty isolated Plaintiff and deprived her of the same institutional guidance provided to her peers, Plaintiff was forced to sit for her professional board examination without vital institutional preparation.

38. As a direct result of this informational deprivation, Plaintiff missed passing her board examination in the Summer of 2022, near the end of the program, by a margin of approximately one question, causing her immediate financial and professional harm.

**E. Erroneous Graduation Determination and Academic Maladministration**

39. On or about July 27, 2022, immediately prior to the scheduled graduation ceremony, Defendant's faculty informed Plaintiff that she had failed a required course and would be barred from graduating.

40. This determination was made despite Plaintiff having completed two full years of coursework and maintaining passing performance evaluations.

41. Plaintiff immediately requested an administrative review and clarification from the program faculty and Program Manager Jean Anitori.

42. Program Manager Jean Anitori and faculty dismissed Plaintiff's requests, informing her that the graduation denial was final and that nothing could be done to review the determination.

43. Left with no institutional recourse, Plaintiff independently audited her own academic records and grading histories.

44. Through this independent audit, Plaintiff uncovered a grading calculation error committed by Defendant's faculty, wherein instructors applied inconsistent grading weights and erroneous calculations within the same course module.

6

45. When the mathematical calculations were corrected to reflect actual performance, Plaintiff maintained a clear passing grade in the course.

46. Plaintiff ultimately graduated only because she personally discovered, documented, and forced Defendant to acknowledge its own grading error on July 27, 2022, the day before graduation.

## V. PRE-LITIGATION SETTLEMENT EFFORTS

47. Prior to initiating this formal civil action, Plaintiff engaged in good-faith efforts to resolve this dispute administratively and avoid unnecessary litigation.

48. On July 8, 2026, Plaintiff transmitted formal written correspondence to Defendant's administrative agents and legal representatives, providing detailed notice of her legal claims and extending an opportunity for amicable pre-suit resolution.

49. On July 22, 2026, Defendant, through its designated legal counsel, transmitted a written response explicitly declining Plaintiff's administrative requests for a resolution, settlement, or alternative remedial relief.

50. Defendant's legal representatives stated that the institution did not concur with Plaintiff's allegations of discriminatory and retaliatory treatment and indicated that the institution considered the operational matter closed.

51. Because Defendant flatly rejected Plaintiff's pre-litigation settlement overtures and refused to offer administrative or financial remedies, Plaintiff brings this action.

## VI. CAUSES OF ACTION

## COUNT I

**Violation of Title VI of the Civil Rights Act of 1964**

**(Intentional Discrimination / Disparate Treatment Based on Race )**

7

52. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 14 and paragraphs 15 through 22, 35 through 36, and 39 through 45 as if fully set forth herein. Plaintiff explicitly excludes from this count all allegations relating to her medical emergency, surgery, or disability.

53. Defendant is a recipient of federal financial assistance, making it subject to the anti-discrimination requirements of Title VI of the Civil Rights Act of 1964.

54. Defendant, through its faculty and administrative agents, intentionally subjected Plaintiff to unequal educational treatment, disparate academic evaluations, and systematic exclusion from educational communications because of her race.

55. The discriminatory conduct of Defendant's agents was sufficiently severe, pervasive, and persistent that it created an objectively hostile educational environment that interfered with and deprived Plaintiff of her ability to participate in and benefit from Defendant's educational program.

56. Defendant had actual notice of the hostile educational environment through Plaintiff's direct complaints but acted with deliberate indifference by failing to adequately investigate, correct, or address the discriminatory conduct.

57. As a direct and proximate result of Defendant's intentional racial discrimination and deliberate indifference, Plaintiff suffered compensatory damages, including severe emotional distress, humiliation, out-of-pocket costs, and lost professional opportunities.

**COUNT II**

**Violation of Title VI of the Civil Rights Act of 1964**

**(Hostile Educational Environment Based on Race)**

58. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 14 and paragraphs 15 through 26 as if fully set forth herein. Plaintiff explicitly excludes from this count all allegations relating to her medical emergency, surgery, or disability.

59. The discriminatory conduct of Defendant's agents was sufficiently severe, pervasive, and persistent that it created an objectively hostile educational environment.

60. This hostile environment effectively interfered with and deprived Plaintiff of her ability to participate in, access, and benefit from Defendant's educational program.

61. Defendant had actual notice of the hostile educational environment through Plaintiff's direct complaints but acted with deliberate indifference by failing to adequately investigate, correct, or address the discriminatory conduct.

62. As a direct and proximate result of Defendant's deliberate indifference to the racially hostile educational environment, Plaintiff suffered compensatory damages, including profound emotional distress, mental anguish, and educational disruption.

**COUNT III**

**Violation of Title II of the Americans with Disabilities Act**

**(Intentional Disability Discrimination)**

63. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 14 and paragraphs 27 through 33, 35 through 36, and 39 through 45 as if fully set forth herein. Plaintiff explicitly excludes from this count all allegations relating to racial discrimination or race-based hostile work environment.

64. Defendant is a public entity subject to Title II of the Americans with Disabilities Act.

65. Plaintiff, by virtue of her sudden life-threatening ruptured ectopic pregnancy, emergency surgery, and resulting post-surgical limitations, suffered a temporary physical impairment that substantially limited major life activities, constituting a qualifying disability under the ADA.

66. Defendant had actual, immediate knowledge of Plaintiff's physical impairment and resulting limitations on or about March 23, 2022.

67. Defendant, through its agents, intentionally discriminated against Plaintiff on the basis of her disability by treating her medical condition with hostility, applying coercive pressure during her recovery timeline, and actively treating her differently because of her medical status.

68. Defendant acted with deliberate indifference to Plaintiff's federally protected rights as a qualified individual with a disability.

69. As a direct and proximate result of Defendant's intentional disability discrimination and deliberate indifference, Plaintiff suffered compensatory damages, including severe emotional distress, mental anguish, and educational disruption.

## COUNT IV

**Violation of Section 504 of the Rehabilitation Act of 1973**

**(Intentional Disability Discrimination)**

70. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 14 and paragraphs 27 through 33, 35 through 36, and 39 through 45 as if fully set forth herein. Plaintiff explicitly excludes from this count all allegations relating to racial discrimination or race-based hostile work environment.

71. Defendant receives federal financial assistance, thereby subjecting it to the statutory requirements of Section 504 of the Rehabilitation Act of 1973.

72. Plaintiff was an otherwise qualified individual with a disability entitled to equal access to Defendant's educational programs and activities.

73. Defendant's agents acted with intentional animus, bad faith, and deliberate indifference toward Plaintiff's medical condition by excluding her from supportive program channels, treating her recovery period as an administrative obstacle, and failing to administer her academic records with the same diligence afforded to non-disabled peers.

74. As a direct and proximate result of Defendant's intentional discrimination and deliberate indifference under Section 504, Plaintiff suffered compensatory damages, including emotional distress, humiliation, and financial and professional harm.

## COUNT V

**Retaliation Under Title VI of the Civil Rights Act of 1964**

75. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 14, paragraphs 25 and 34, and paragraphs 35 through 46 as if fully set forth herein.

76. Plaintiff engaged in a protected activity under Title VI by opposing and questioning systemic discriminatory treatment during her enrollment, including directly challenging Professor Carrie Hall via email on September 28, 2021, regarding whether her unequal treatment was motivated by race.

77. Defendant's faculty and administrative agents had actual knowledge of Plaintiff's protected opposition.

78. In close temporal proximity to Plaintiff's protected activity, Defendant's agents systematically subjected Plaintiff to adverse educational actions, including withholding critical academic board examination data in Summer 2022 and issuing an unverified, erroneous course failure determination on July 27, 2022, immediately prior to graduation.

11

79. Defendant acted with deliberate indifference to Plaintiff's protected civil rights by allowing retaliatory academic actions to be executed by its faculty without oversight or review.

80. A causal connection exists between Plaintiff's protected opposition to racial discrimination and the adverse actions taken by Defendant's faculty.

81. As a direct and proximate result of Defendant's retaliatory conduct and deliberate indifference, Plaintiff suffered profound educational disruption, severe professional setbacks, board examination failure, and financial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding the following remedies:

a. **Compensatory Damages**: Award full compensatory damages for emotional distress, mental anguish, humiliation, lost professional opportunities, and out-of-pocket tuition costs caused by Defendant's illegal actions;

b. **Economic Damages**: Award special economic damages for financial losses stemming from the delayed graduation, missed board examination components, and disruptions to professional certification timelines;

c. **Pre-judgment and Post-judgment Interest**: Award interest on all economic damages sums from the date of the injury to the date of judgment;

d. **Costs and Fees**: Award Plaintiff all allowable costs of this action pursuant to 28 U.S.C. § 1920; and

e. **Other Relief**: Grant any additional, equitable, or alternative relief that this Court deems just, proper, and necessary under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and counts so triable as a matter of right.

Dated: July 24 , 2026.

Respectfully submitted,

**DAEREGESCIA CHAMBERS**

18001 RICHMOND PLACE DR APT 424

TAMPA, FL 33647

813-403-1730

D.CHAMBERS0001@YAHOO.COM

Plaintiff Pro Se

13